HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COOPER CARRY, INC., <br><br> Plaintiff, <br><br> v. <br><br> OUTSIDE THE BIG BOX LLC, UPTOWN CENTER DEVELOPMENT LLC, and AARON LICHTMAN, <br><br> Defendants. | Case No. C08-5630 RBL <br><br> ORDER DENYING DEFENDANT LICHTMAN'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR CHANGE OF VENUE |

THIS MATTER comes before the Court on Defendant Lichtman's Motion to Dismiss for Lack of Jurisdiction and for Change of Venue [Dkt. #17]. The Court has reviewed the materials submitted in support of, and in opposition to, the motion. Oral argument is not necessary for the Court to resolve the issues presented. For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

Plaintiff Cooper Carry is a company with its principal place of business in Georgia. Cooper Carry has additional offices in Virginia, New York, and California. Defendant Aaron Lichtman is an individual residing in New York. Defendants Outside the Big Box ("OTBB") and Uptown Development ("UPTown") (together, the "Companies") only have offices in New York. The underlying facts presented by Cooper Carry are taken as true for the purposes of this order.

ORDER
Page - 1

Lichtman is the owner of UPTown and OTBB. In 2006, UPTown, working in conjunction with developer OTBB, was hired by the City of University Place, Washington ("City") to develop a $250 million Town Center. The Companies paid the City approximately $569,000 for the exclusive right to negotiate a Disposition and Development Agreement ("DDA") with the City. The DDA bound the Companies to resolve disputes with the City in Washington and the Companies kept registered agents in Washington.

In late 2006, Cooper Carry entered into a Base Contract with the Companies. The Base Contract bound Cooper Carry to perform "master plan concept design services" for the Town Center; schematic design services were not included. In furtherance of the Base Contract, Cooper Carry's representatives attended meetings in Washington with City Representatives and Lichtman. Cooper Carry performed the work called for by the Base Contract and the Companies paid in-full.

In July 2007, the Companies and Cooper Carry negotiated a second phase (Phase II) of work under which Cooper Carry provided schematic design and construction document services. Compensation for these additional services was not contingent on any condition precedent other than performance of the work. The Companies verbally requested that Cooper Carry provide these services for Phase II and Cooper Carry subsequently did so.

In January 2008, the City and the Companies executed a Termination Agreement. The City paid the Companies $1.75 million in exchange for ownership of all the Companies' work plans, specifications, and intellectual property related to the Town Center. This included work product contributed by entities contracting with the Companies. The Termination Agreement designated Washington as the appropriate venue for any disputes.

Lichtman was not a mere distant owner of the Companies; he was personally involved in many of the above-cited events. In the middle of 2006, he was conducting business in Washington in an attempt to land the Town Center contract. At the end of 2006, he acted on behalf of the Companies in negotiating the Base Contract with Cooper Carry. On several occasions in January 2007, he met with a Cooper Carry representative in Washington to discuss the Town Center project. In June 2007, he again met with a Cooper Carry representative in Washington, this time to review concept designs and prepare for Phase II. Beginning in July 2007, Lichtman, on behalf of the Companies, negotiated an agreement with Cooper

Carry for Phase II. Those negotiations occurred in various locations, but never in Washington. For instance, Lichtman went to Colorado on behalf of the Companies in October 2007 to meet with Cooper Carry and City representatives concerning the Town Center and Phase II.

## ANALYSIS

**A.  Personal Jurisdiction**

The test for personal jurisdiction is two-fold: Washington's long-arm statute must confer personal jurisdiction over the Defendant and the exercise of that jurisdiction must comport with due process considerations. *Rio Props., Inc., v. Rio Int'l Interlink*, 284 F.3d 1008, 1019 (9th Cir. 2002). Washington's long-arm statute "authorizes courts to exercise jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution." *MBM Fisheries, Inc., v. Bolinger Mach. Shop and Shipyard, Inc.*, 60 Wn. App. 414, 423 (1991). The Court, therefore, need only determine the limits imposed by the due process clause to establish personal jurisdiction.

The Court may have general or specific personal jurisdiction. Specific jurisdiction is determined by a three-part test: (1) the non-resident defendant purposefully directed his activities or consummated some transaction with the forum or a resident thereof, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking benefits and protections of its laws; (2) the claim is one which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998); *Vernon Johnson Family Ltd. P'ship v. Bank One Texas, N.A.*, 80 F. Supp. 2d 1127, 1133 (W.D. Wa. 2000).

In its previous Order Denying Motion to Dismiss for Lack of Jurisdiction and Forum Non Conveniens [Dkt. #25], the Court determined that it has specific personal jurisdiction over the Companies. Lichtman was at all relevant times involved in or responsible for the negotiations and activities of the Companies. The Court may properly assert personal jurisdiction over him.

**B.  Personal Liability**

Lichtman's Motion to Dismiss [Dkt. #17] and Reply Declaration [Dkt. #27] put forward a litany of proposed justifications for dismissal. Specifically, Paragraphs 2 and 3 of his Reply assert that Lichtman was not involved in any of the pertinent transactions in his individual capacity. That Lichtman did not

participate in his individual capacity is immaterial for the purposes of establishing personal jurisdiction. Paragraphs 4 and 5 claim that Lichtman never had an apartment in Washington as written in the Court's Order Denying Motion to Dismiss [Dkt. #25]. That order, however, made clear that the Court took Plaintiff's allegations as true. Contrary to Lichtman's claim, Cooper Carry did make that assertion. *See* [Dkt. #13] (Opposition to Motion to Dismiss, p. 3). Paragraphs 6, 7, and 8 assert that no alleged negotiations or work were performed in Washington. Again, this is immaterial. The basis of the Court's personal jurisdiction is the relevant activities' intimacy and contacts with an ongoing project and relationship in Washington. Finally, Paragraphs 9 and 10 state that there were insufficient contacts at the time the action was commenced to comply with due process considerations. The Court's Order Denying Motion to Dismiss [Dkt. #25] made it clear that the moment at which sufficient contacts must exist is when the claim arises, not when it is commenced.

**C. Venue**

The Court has previously determined that venue is proper, and further declined to transfer venue, for Cooper Carry's suit against the Companies. [Dkt. #25] (Order Denying Motion to Dismiss). Lichtman's argument is no more persuasive than the one put forth by the Companies. If anything, Lichtman's argument for transfer is less persuasive. Two companies that he owns are already parties to the lawsuit in Washington, the additional burden on him to appear as an individual is minimal, if it exists at all.

## CONCLUSION

For the foregoing reasons, Defendant Lichtman's Motion to Dismiss for Lack of Jurisdiction and for Change of Venue [Dkt. #17] is DENIED.

Dated this 30th day of January, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE